IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ELECTRONICALLY FILED
Feb 09 2021
U.S. DISTRICT COURT
Northern District of WV

JOY MOORE,

    Plaintiff,

v.

MHM SUPPORT SERVICES,
a Missouri corporation, and
MERCY HEALTH, LLC,
a Missouri Limited Liability Company,

    Defendants.

1:21-CV-21 (Kleeh)

Civil Action No. 21-C-_____
Judge:
Jury Trial Demanded

## COMPLAINT

1. Plaintiff is, and at all times relevant hereto has been a resident of Preston County, West Virginia.

2. Defendants are corporate entities organized under the laws of the State of Missouri with their principal places of business in Chesterfield, Missouri.

3. Plaintiff was employed by Defendants beginning in July 2016 as a document improvement specialist, reviewing and coding medical documents into Defendants' system.

4. In February 2018, Plaintiff applied for a supervisor position with Defendants. Plaintiff was 58 years old at the time.

5. Defendants passed Plaintiff over to give the Supervisor position to Tamera Crow, who was roughly ten years younger than Plaintiff.

6. Crow's supervisory skills were poor.

7. Due to Crow's supervisory deficiencies, Defendants chose to change her job responsibilities so that Crow could remain a supervisor in name.

8. Defendants reinstated the previous supervisor within approximately two weeks of Crow's selection for the supervisor position.

9. In February 2019, Defendants reopened the same supervisor position Plaintiff had applied for previously.

10. Plaintiff, now age 59, again applied for this supervisor position with Defendants.

11. On February 4, 2019, Milissa Kovachik told Plaintiff that Dr. Mary Bourland M.D., the Vice President of Medical Documentation for Mercy Health, wanted Plaintiff to take over in the supervisory position for which Plaintiff had applied in February 2018.

12. During this call, Kovachik congratulated Plaintiff on getting the supervisor position. Kovachik discussed various meetings along with other job duties the Plaintiff would be performing in the supervisor position. Kovachik explained to Plaintiff that Human Resources would contact her regarding the benefits and pay of the position.

13. Kovachik asked Plaintiff if she felt that the job should be posted.

14. Plaintiff responded that she did feel that it should be posted, that others working for Defendants would view events more favorably if the job were posted rather than if Plaintiff were simply awarded the supervisor position without it being posted first.

15. On or about February 5, 2019, Kovachik showed Plaintiff an email from Dr. Bourland stating that she wanted to place Plaintiff into the supervisory position, but that Human Resources had said it should be posted in case other internal candidates emerged.

16. Kovachik also told Plaintiff that she had done quite well on an internal test which evaluated the aptitudes of Mercy employees. Kovachik said that Plaintiff's test showed a good score for managerial aptitude.

17. On February 7, 2019, Defendants posted the supervisor position again.

18. That same day, February 7, 2019, Plaintiff emailed Kovachik to let her know that the job was posted.

19. Plaintiff applied for the supervisory position on February 7, 2019.

20. On February 11, 2019, Kovachik called Plaintiff to inform her that Kelley Jones had applied for the supervisor position as well.

21. On February 25, 2019, Plaintiff requested an interview for the supervisor position.

22. Kovachik agreed but stated the interview had to take place that same day.

23. Kovachik interviewed Plaintiff over the phone on February 25, 2019.

24. During the "interview" for the supervisor position, Kovachik told Plaintiff that she planned to reassign Plaintiff to a Revenue Integrity Team, which did not exist at that time.

25. Plaintiff understood that Kovachik's refusal to discuss Plaintiff's application for the supervisor position signaled her intent to reject Plaintiff's application again.

26. On February 26, 2019, Defendants emailed Plaintiff to inform her that Jones had been selected for the supervisor position.

27. Defendants passed Plaintiff over to give the supervisory position to Jones, who was roughly fifteen years younger than Plaintiff, based upon Plaintiff's age in comparison to Jones age.

28. On May 14, 2020, Defendants told Plaintiff that her position was permanently eliminated.

29. Upon information and belief, Plaintiff would not have been discharged had she held one of these supervisory positions for which she had been passed over by Defendants.

30. Defendants passed Plaintiff over for the two supervisory positions due to Plaintiff's age.

31. As a result of these discriminatory promotion decisions, Plaintiff was subjected to termination.

32. Plaintiff would not have been subjected to the adverse employment action of termination had she not been 58+ years old when applying for those positions.

33. Upon information and belief, both Crow and Jones (who had held the positions for which Plaintiff had applied) are still employed by Defendants.

34. By nature of her age, Plaintiff is a member of a class which was disparately impacted by Defendants' layoffs.

35. Defendants laid off employees over age 40 at a statistically significantly greater rate than other employees.

## COUNT 1 – WEST VIRGINIA HUMAN RIGHTS ACT VIOLATION

36. The West Virginia Human Rights Act proscribes conduct which has a disparate impact on certain groups of persons. WVSC §5-11-9.

37. Defendants could have accomplished their goal of eliminating staff or overhead without doing so in a discriminatory manner as they did.

38. Defendants' layoff (during which the Plaintiff was terminated) had a disparate impact upon older workers, such as Plaintiff.

39. Even if Defendants' layoff during which Plaintiff was terminated was consistent with business necessity, suitable alternative practices existed which Defendant refused to adopt.

## COUNT II – FAMILY AND MEDICAL LEAVE ACT VIOLATION

40. It is unlawful for any employer subject to FMLA to interfere with or retaliate against employees for exercising their rights under the FMLA. 29 USCS § 2614(a)(1), 29 USCS § 2615(a)(2).

41. Plaintiff first obtained FMLA leave for a corneal ulcer on December 18, 2019, running through January 6, 2020.

42. On January 7, 2020, Plaintiff's first day back, Kovachik inundated Plaintiff with demands that Plaintiff submit daily productivity reports to her, which would include an accounting of the hours Plaintiff had worked that day.

43. Previously, Plaintiff had submitted her hours worked in total for that day, rather than having to detail which specific hours she worked during a day.

44. On January 9, 2020, Kovachik called Plaintiff and told Plaintiff that this new reporting requirement had been implemented at the behest of Dr. Bourland.

45. On March 30, 2020, Plaintiff raised the issue of her depression and fatigue with Kovachik.

46. During this conversation, Plaintiff explained that she had been depressed over the death of her ex-husband who had died in December 2019.

47. Plaintiff was granted FMLA leave from March 31, 2020 through April 23, 2020.

48. Defendants terminated Plaintiff on May 14, 2020.

49. The stated basis for this termination was that she was being terminated as part of a larger COVID-based mass layoff.

50. Defendants' actions were motivated, in whole or in part, by Plaintiff's FMLA leave requests in 2019 and 2020.

51. Defendants' actions in assigning Plaintiff additional frivolous duties immediately upon her return from FMLA in January 2020 evidence its negative animus against her for taking FMLA leave.

52. Upon information and belief, Kovachik's representations about these new duties being assigned to Plaintiff by Bourland were false.

53. As Kovachik's stated basis for assigning these new duties to Plaintiff was false, it creates the presumption that this stated basis was pretextual to conceal Defendants' illegal animus toward Plaintiff based on her use of FMLA leave.

WHEREFORE, Plaintiff demands against Defendant damages for mental and emotional distress, lost wages, punitive damages, reinstatement, attorneys' fees and costs, and such other and further relief as may upon the premises be appropriate.

Respectfully submitted,

JOY MOORE,
Plaintiff by Counsel,

WALT AUVIL (WVSB # 190)
KIRK AUVIL (WVSB # 12953)

The Employment Law Center, PLLC
1208 Market Street
Parkersburg, WV 26101
(304) 485-3058

6

STATE OF WEST VIRGINIA,

COUNTY OF Preston, TO-WIT:

Joy Moore, the Plaintiff named in the foregoing and hereto annexed COMPLAINT, being first duly sworn, deposes and says that the facts therein contained are true, except insofar as they are therein stated to be upon information, and insofar as they are therein stated to be upon information, Plaintiff believes them to be true.

_____
JOY MOORE

Taken, subscribed and sworn to before me this 28 day of January, 2021.

My commission expires: May 31, 2023.

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
MICHELLE MYERS
1538 Summer School Road, Morgantown, WV 26508
MY COMMISSION EXPIRES MAY 31, 2023

_____
NOTARY PUBLIC

7